UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ann-Marie Draeger, | Case Type: Employment |
| Plaintiff, | |
| vs. | |
| Minnesota Shubert Center for Dance and Music, Inc., and Artspace Projects, Inc., | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| Defendants. | Court File No. _____ |

Plaintiff, by her attorneys Fabian May & Anderson, PLLP brings this action for damages and other legal and equitable relief from Defendants' violations of laws prohibiting discrimination and reprisal in employment, and Defendants' violation of the Family and Medical Leave Act. Plaintiff states the following as her claims against Defendants:

## JURISDICTION AND VENUE

1. This action arises under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12010, *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* Jurisdiction for claims brought pursuant to these acts is conferred upon this Court by 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. §§ 2000e-5(f) and 12117(a).

2. Plaintiff also asserts claims under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* Jurisdiction for these claims is conferred upon this Court by 28 U.S.C. § 1367.

3.      Defendants operate their business within the District of Minnesota, their corporate offices are located in the District of Minnesota, the employment records relevant to this case are, upon information and belief, maintained and administered within the District of Minnesota, and a substantial part of the events giving rise to the claims alleged herein occurred in the District of Minnesota. The District of Minnesota is therefore the appropriate venue for this matter pursuant to 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiff Ann-Marie Draeger ("Plaintiff") is a Minnesota resident.

5.      Defendant Minnesota Shubert Center for Dance and Music, Inc. is a Minnesota non-profit corporation doing business as The Cowles Center for Dance & The Performing Arts (hereinafter referred to as "The Cowles Center"), with corporate headquarters located in Minneapolis, Minnesota.

6.      Defendant Artspace Projects, Inc. ("Artspace") is a Minnesota non-profit corporation with corporate headquarters located in Minneapolis, Minnesota.

7.      At all times relevant herein, The Cowles Center and Artspace (hereinafter collectively referred to as "Defendants") were Plaintiff's integrated employers and/or joint employers.

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff worked for Defendants as Director of Development from on or about March 5, 2012 until her involuntary termination on February 3, 2014.

9.      In or around May 2013, Plaintiff suffered a non-work-related injury resulting in a long-term, possibly permanent, physical impairment (hereinafter referred to

as Plaintiff's "disability") that substantially and materially limits her ability to perform certain major life activities, including but not necessarily limited to sitting, standing, staying still, twisting, bending, walking, and lifting.

10. Plaintiff provided updates regarding her disability, limitations, and treatment to her direct supervisor, Executive Director Mr. Lynn Von Eschen ("Von Eschen"), as well as others at the workplace.

11. Plaintiff's disability required that she periodically alternate between sitting and standing in order to reduce pain and avoid the onset of muscle weakness in her leg. On or about July 24, 2013, Plaintiff's doctor provided a note indicating that Plaintiff needed to use an adjustable-height desk at work, which would allow her to continue working while alternating between sitting and standing. Plaintiff provided the note to Von Eschen, who instructed her to submit it to the General Manager Randy Ingram, which she did. After Plaintiff submitted the request to Mr. Ingram as instructed, the adjustable-height desk was never provided.

12. Starting in late August 2013, and on multiple occasions thereafter, Plaintiff discussed with her direct supervisor Von Eschen and others that she would probably need to take a leave of absence due to her disability. In early October 2013, Plaintiff told Von Eschen that her medical providers had informed her that her condition had become more serious, making it more likely that she would need medical leave. Von Eschen thereafter reviewed with Plaintiff the development work that he wanted completed before she commenced any medical leave.

13. Also in early October 2013, Plaintiff requested that Von Eschen, as a reasonable accommodation, allow her to work from her home, where she could work in an environment better suited to accommodate her disability and allow her to alternate between various positions to mitigate her pain and avoid the onset of leg weakness. Von Eschen summarily denied this request, stating that it would give the appearance of favoritism. Von Eschen, however, had previously allowed other non-disabled employees to occasionally work from home.

14. Plaintiff continued to work without the requested accommodations, which exacerbated her disability and the pain associated with it and led to symptoms of depression. Plaintiff's medical providers recommended that she take a medical leave of absence to facilitate her recovery and to avoid further physical injury due to the lack of accommodations.

15. In early November 2013, Plaintiff reminded Von Eschen and others that she would likely need to take a leave of absence due to her disability.

16. On or about November 14, 2013, Plaintiff again reminded Von Eschen her need for a leave of absence, and specifically requested a scheduled time to speak to him about it. He told her that she should wait, and that they would discuss it in a meeting on November 18, 2013.

17. On or about November 15, 2013, Plaintiff reported to Von Eschen that her medical provider recommended that she receive plasma injections to address her disability, and that she would need a leave of absence in connection with this treatment.

18. In a meeting with Plaintiff on or about November 18, 2013, Von Eschen unexpectedly and falsely alleged that Plaintiff's performance was not meeting expectations, and threatened Plaintiff's employment, telling her that he had planned to fire her that day, but had been 'talked into' placing her on a performance improvement plan ("PIP") instead. Von Eschen identified alleged deficiencies, but provided no facts to support that the alleged deficiencies existed. Von Eschen provided nothing in writing for Plaintiff to review during the meeting, instructed her not to take notes during the meeting and, in fact, prevented her from doing so. Toward the end of the meeting, Von Eschen stated that he would send Plaintiff a written PIP via email that would provide more specifics as to her supposed deficiencies, which he never did.

19. Prior to the meeting with Von Eschen on November 18, 2013, Plaintiff had received no formal warnings in connection with her work and had been given no reason to believe, by either Von Eschen or anyone else at The Cowles Center or Artspace, that her work failed to meet expectations. To the contrary, Plaintiff had received recent compliments about her work from Von Eschen, President of Artspace Kelley Lindquist, and several Board Members, including Wendy Dayton and Development Committee Chair Mary Margaret MacMillan

20. On or about November 21, 2013, Artspace's Chief Operations Officer, Will Law ("Law"), who also served as The Cowles Center's Treasurer, met with Plaintiff and asked her to consider resigning instead of taking a leave of absence, and thereby avoid termination.

21.     Plaintiff subsequently emailed Law and others to tell them that she did not wish to resign, and would instead need to take a medical leave of absence consistent with her earlier notices provided to Von Eschen and other management personnel.

22.     On or about December 2, 2013, the Senior Staff Accountant Kim Upsher ("Upsher") called Plaintiff into her office to discuss Plaintiff's email to Law and others. During the meeting, Upsher stated that she considered the email "threatening." Upsher threatened Plaintiff that if she went out on leave, her health benefits would be dropped and she would not be restored to the same position and salary. Upsher then repeatedly asked Plaintiff what she would do in response. Plaintiff responded that she would consider it retaliation and consult an attorney, at which point Upsher accused Plaintiff of trying to hurt The Cowles Center by suing it rather than voluntarily resigning.

23.     Notwithstanding the threats and hostility from her employers, Plaintiff commenced her medical leave of absence on December 3, 2013.

24.     Von Eschen then sent a letter to Plaintiff dated December 6, 2013, via email, mail, and FedEx Overnight. In the letter, Von Eschen accused Plaintiff of having various performance deficiencies, but without citing specific examples. He further demanded that Plaintiff draft her own PIP, and instructed Plaintiff to return her keys and badge. Von Eschen also requested medical information substantiating Plaintiff's need for leave, and agreed to use the form issued by the Department of Labor in connection with leave under the Family and Medical Leave Act ("FMLA"), though he claimed the FMLA did not apply. In a transparent effort to disqualify Plaintiff from further employment,

"sitting for long periods of time" was falsely listed as an essential function of Plaintiff's job on the FMLA form Von Eschen supplied.

25. Plaintiff responded to Von Eschen by way of a letter dated December 13, 2013, in which she stated that, regardless of whether the FMLA applied, she was seeking leave as a reasonable accommodation for her disability. She also stated, "I am concerned that the summary [of my alleged performance deficiencies] came after my previous request for accommodation of a stand up desk and the ability to work from home." Plaintiff also addressed Von Eschen's false accusations against her as best she could in the letter, given the lack of factual support provided by Von Eschen. Included with Plaintiff's letter response was the FMLA form completed by Plaintiff's medical provider supporting her eligibility for protected leave through January 14, 2014.

26. Von Eschen responded in a letter dated December 18, 2013. In the letter, he falsely claimed to have accommodated Plaintiff's request for an adjustable-height desk, falsely claimed that Plaintiff had not asked to work from home, and stated that such a request would not have been approved anyway.

27. In a subsequent letter dated January 6, 2014, Von Eschen told Plaintiff that she could not return to work without a doctor's note stating that she could perform the essential functions of her job, and asked Plaintiff again to draft her own PIP. Plaintiff and Von Eschen then exchanged additional letters in which Plaintiff asked for examples of specific conduct (which were never provided) in order to draft a more detailed PIP, and corrected Von Eschen's falsehoods regarding Defendants' failure to provide

7

reasonable accommodations. Plaintiff's leave was then extended so she could meet with her medical provider and secure the doctor's note Von Eschen had demanded.

28. On January 17, 2014, Plaintiff's medical provider supplied Plaintiff with a note stating that Plaintiff could return to work and could perform the essential functions of the job with the reasonable accommodation of an adjustable-height desk. Plaintiff provided the note to Defendants, but was not allowed to return to work until February 3, 2014.

29. Shortly after arriving for work on February 3, Plaintiff was called into a meeting with Von Eschen and Law, during which Plaintiff was told that her employment was being terminated immediately.

## CAUSES OF ACTION AGAINST BOTH DEFENDANTS

## COUNT I

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112.**

30. By reference hereto, Plaintiff incorporates the paragraphs above.

31. 42 U.S.C. § 12112 provides that an employer shall make reasonable accommodations for the known physical or mental limitations of a qualified individual with a disability who is an employee.

32. Plaintiff was a qualified individual within the meaning of 42 U.S.C. § 12112, in that she could perform the essential functions of the job with reasonable accommodation.

33. Plaintiff also had a "disability" within the meaning of 42 U.S.C. § 12112.

34. Defendants knew about Plaintiff's disability, and knew about Plaintiff's requests for reasonable accommodation, including Plaintiff's request for an adjustable-height desk and to occasionally work from home.

35. Defendants violated 42 U.S.C. § 12112 by failing to provide Plaintiff the reasonable accommodations of an adjustable-height desk and occasionally working from home.

36. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages for loss of income, mental anguish, and emotional distress and other damages in an amount in excess of $75,000.

## COUNT II

### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112

37. By reference hereto, Plaintiff incorporates the paragraphs above

38. 42 U.S.C. § 12112(a) provides that an employer shall not discriminate against a qualified individual on the basis of disability in regard to the employee's compensation, discharge, and other terms, conditions, and privileges of employment.

39. Defendants violated 42 U.S.C. § 12112(a) by their conduct, including but not necessarily limited to discharging Plaintiff because of her disability.

40. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 12112(a), Plaintiff has suffered and continues to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT III

## RETALIATION, INTIMIDATION, THREATS, AND INTERFERENCE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203.

41.    42 U.S.C. § 12203(a) prohibits retaliation against any individual because the person opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(b) further provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this Chapter."

42.    Plaintiff engaged in conduct protected by the ADA, including but not necessarily limited to requesting reasonable accommodations, opposing Defendants' efforts to make her resign, telling Upsher that she would oppose Defendants' retaliatory conduct, taking a disability-related leave of absence, and reporting unlawful retaliation in her December 13, 2013 letter.

43.    Defendants violated 42 U.S.C. § 12203 by their conduct, including but not necessarily limited to putting Plaintiff on an unjustified PIP, attempting to intimidate Plaintiff into resigning, threatening reprisal if Plaintiff took medical leave, falsely stating on the FMLA form that "sitting for long periods of time" was an essential function of Plaintiff's job, not allowing Plaintiff to return to work immediately after she was released by her medical provider, and terminating her employment.

44.    As a direct and proximate result of Defendants' violation of 42 U.S.C. § 12203, Plaintiff has suffered and continues to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT IV

### FAILURE TO ACCOMMODATE IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.08, SUBD. 6.

45. By reference hereto, Plaintiff incorporates the paragraphs above.

46. Minn. Stat. § 363A.08, subd. 6 of the Minnesota Human Rights Act provides that it is an unfair employment practice for an employer not to make reasonable accommodation to the known disability of a qualified disabled person.

47. Plaintiff was a qualified disabled person within the meaning of Minn. Stat. § 363A.08, subd. 6 in that she had a disability, and could perform the essential functions of the job with accommodation.

48. Defendants knew about Plaintiff's disability, and knew about Plaintiff's requests for reasonable accommodation, including Plaintiff's request for an adjustable-height desk and to occasionally work from home.

49. Defendants violated Minn. Stat. § 363A.08, subd. 6 by failing to provide Plaintiff the reasonable accommodations of an adjustable-height desk and occasionally working from home.

50. As a direct and proximate result of Defendants' conduct in violation of Minn. Stat. § 363A.08, subd. 6, Plaintiff has suffered damages for loss of income, mental anguish, and emotional distress in an amount in excess of $75,000.

## COUNT V

### DISABILITY DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.08, SUBD. 2.

51. By reference hereto, Plaintiff incorporates the paragraphs above.

52. Minn. Stat. § 363A.08, subd. 2 of the Minnesota Human Rights Act provides that it is an unfair employment practice for an employer to discharge or otherwise discriminate against an employee with respect to the terms, compensation, conditions, facilities, or privileges of employment, because of the employee's disability.

53. Defendants violated Minn. Stat. § 363A.08, subd. 2 by their conduct, including but not necessarily limited to discharging Plaintiff because of her disability.

54. As a direct and proximate result of Defendants' conduct in violation of Minn. Stat. § 363A.08, subd. 2, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.

## COUNT VI

### REPRISAL IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.15.

55. By reference hereto, Plaintiff incorporates the paragraphs above.

56. Minn. Stat. § 363A.15 prohibits employers from engaging in reprisal against any person because that person opposed a practice forbidden under the Minnesota Human Rights Act. Minn. Stat. § 363A.15 further provides that a reprisal includes any form of intimidation, retaliation, or harassment.

57. Plaintiff engaged in conduct protected by the Minnesota Human Rights Act, including but not necessarily limited to requesting reasonable accommodations, opposing Defendants' efforts to make her resign, telling Upsher that she would oppose

Defendants' retaliatory conduct, taking a disability-related leave of absence, and reporting unlawful retaliation in her December 13, 2013 letter.

58.     Defendants violated Minn. Stat. § 363A.15 by their conduct, including but not necessarily limited to putting Plaintiff on an unjustified PIP, attempting to intimidate Plaintiff into voluntarily resigning, threatening reprisal if Plaintiff took medical leave, falsely stating on the FMLA form that "sitting for long periods of time" was an essential function of Plaintiff's job, not allowing Plaintiff to return to work immediately after she was released by her medical provider, and terminating her employment.

59.     As a direct and proximate result of Defendants' violation of Minn. Stat. § 363A.15, Plaintiff has suffered and continues to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT VII

### INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(1).

60.     By reference hereto, Plaintiff incorporates the paragraphs above.

61.     29 U.S.C. § 2615(a)(1) of the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

62.     Pursuant to 29 U.S.C. § 2614(a), upon return from her leave, Defendants were to restore Plaintiff to the position of employment she held when the leave commenced.

63. Defendants violated 29 U.S.C. § 2615(a)(1) by their conduct, including but not limited to falsely stating on the FMLA form that "sitting for long periods of time" was an essential function of Plaintiff's job, and failing to restore Plaintiff, upon her return from leave, to the position she held when her leave commenced.

64. As a direct and proximate result of Defendants' violation of 29 U.S.C. § 2615(a)(1), Plaintiff has suffered and continues to suffer loss of income and other damages in an amount in excess of $75,000.

## COUNT VIII

### RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(2).

65. By reference hereto, Plaintiff incorporates the paragraphs above.

66. 29 U.S.C. § 2615(a)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

67. Plaintiff engaged in conduct protected by the FMLA, including but not necessarily limited to requesting medical leave, opposing Defendants' efforts to make her resign, telling Upsher that she would oppose Defendants' retaliatory conduct, taking a leave of absence, and reporting unlawful retaliation in her December 13, 2013 letter.

68. Defendants violated 29 U.S.C. § 2615(a)(2) by their conduct, including but not necessarily limited to putting Plaintiff on an unjustified PIP, attempting to intimidate Plaintiff into resigning, threatening reprisal if Plaintiff took medical leave, falsely stating on the FMLA form that "sitting for long periods of time" was an essential function of

Plaintiff's job, not allowing Plaintiff to return to work immediately after she was released by her medical provider, and terminating her employment.

69. As a direct and proximate result of Defendants' violation of 29 U.S.C. § 2615(a)(2), Plaintiff has suffered and continues to suffer loss of income and other damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ann-Marie Draeger prays for judgment against Defendants Minnesota Shubert Center for Dance and Music, Inc., and Artspace Projects, Inc., as follows:

- A. For all relief available under the Americans with Disabilities Act, including damages for lost wages, compensatory damages for mental anguish, emotional distress, punitive damages, and Plaintiff's reasonable attorney's fees and costs in connection with this action;

- B. For all relief available under the Minnesota Human Rights Act, including up to three times Plaintiff's actual damages for wage loss, mental anguish, and other damages, interest on those amounts, punitive damages, and Plaintiff's reasonable attorney's fees and costs in connection with this action;

- C. For all relief available under the Family and Medical Leave Act, including damages equal to the value of Plaintiff's lost wages and benefits, an equal amount in liquidated damages, interest on these amounts, and Plaintiff's reasonable attorney's fees and costs.

- D. For such further and other relief as the Court deems just.


Dated: 2-3-15                                  **FABIAN MAY & ANDERSON, PLLP**

*[signature]*

John A. Fabian, #13482X
David H. Redden, #391496
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3340
Fax: (612) 455-2217
Email: jfabian@fmalawyers.com
         dredden@fmalawyers.com

**ATTORNEYS FOR PLAINTIFF
ANN-MARIE DRAEGER**